ISAAC MCPHERSON's adm'rs *vs.* ISRAEL, adm'r *d. b. n.*— *c. t. a.* of AGNEW.—*December*, 1832.

It is in general, the duty of the Orphans Court to determine the commissions of an executor or administrator, by allowing a per centage upon the inventory of the deceased's estate; and that includes, in an enlarged construction, all the assets accounted for.

One of the limitations to the exercise of the discretionary power of the Orphans Court, prescribed by the act of 1798, *ch.* 101, *sub-ch.* 10, *sec.* 2, is, that the court shall not allow a *less* rate of commission than 5 per cent. but this only applies to those cases, where there has been a *full* administration by the first executor or administrator.

Under the act of 1820, *ch.* 174, taken in connexion with the act of 1798, in cases of partial administration, where there is a further administrator to be paid for services, the court may allow such compensation to the first administrator, as the services performed actually merit. They may give one *per cent.* or even less; whatever is allowed must nevertheless be a per centage on the whole assets. This is the only standard under the law, whereby to ascertain his commissions.

APPEAL from the Orphans Court of *Baltimore* county.

The appellee, *Fielder Israel*, as administrator *d. b. n.* of *Andrew Agnew*, filed his petition in the Orphans Court for *Baltimore* county, on the 29th of September, 1828; alleg-

ing, that letters of administration on the estate of the said *Andrew Agnew*, had been granted to *Isaac McPherson*, (the appellants' intestate,) who had departed this life without fully settling the estate, having in his hands sundry bonds, notes, accounts, and evidences of debt, belonging to the estate of the said *Andrew*, and a balance in cash, and other property; and praying that the appellants, *Esther McPherson* and *David Hoffman*, administrators of *Isaac McPherson*, may be required to render an account of the estate of the said *Andrew*, up to the time of the death of their intestate—and that they should be decreed to deliver over to the petitioners all the bonds, notes, &c. belonging to that estate.

The defendants, (the appellants) with their answer, exhibited the copy of an account, which they have settled in the Orphans Court, after the death of their intestate, *Isaac*, and admitting the facts contained in the petition, asked that their intestate should be allowed a commission according to the act of assembly, for his services as administrator of *Agnew*, upon the sum of $26,371 68 being the amount of the inventory of said *Agnew's* estate, and of claims, &c. collected by their said intestate in his life-time. Various accounts were exhibited with this answer, showing that the actual payments and disbursements of *McPherson*, as administrator of *Agnew*, amounted to $9,426 76.

The Orphans Court, after ordering the appellants to pay over to the appellee, the bonds, notes, and other property of *Agnew*, order and adjudge that the appellants be allowed a commission at the rate of *ten per centum* on the said sum of $9,426 76, and that they retain the same out of the money belonging to the estate of *Agnew*, which their intestate *Isaac* had in his hands at the time of his death. From this decree the appellants appealed to this court.

The cause came on to be argued before EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Mayer*, for the appellants, contended,

1. That the *minimum* rate is 5 per cent. 2. That the amount, or fund on which it is to be allowed, is the amount of the inventories and debts, (at least of debts collected or secured,) and of money, and other personal property. 3. That the act of 1820, *ch.* 174, does not, (especially where, as here, an account has been rendered by the deceased administrator) repeal the provisions of this testamentary system of 1798, on the subject of commissions. He referred to the case of *Wilson vs. Wilson,* 3 *Gill and Johns.* 20.

*Gwynn*, for the appellee.

The act of 1798 regards the commission to be allowed an executor or administrator, who has fully settled the estate, and the commission is to be allowed only on the property and debts, which have been actually collected.

The act of 1820, *ch.* 174, does not limit the court in allowing a commission to an administrator who has not settled the estate, except as to the *maximum.* They may allow as *little* as they please, and this act applies to every case where the estate is not fully settled.

EARLE, J., delivered the opinion of the court.

The appeal in this case is from the Orphans Court of *Baltimore* county. The appellants are the administrators of *Isaac McPherson*, who administered on the estate of *Andrew Agnew*, deceased: He was in the administration about three years when he passed his first account, and departed this life soon after. Letters of administration *de bonis non,* with the will annexed, were granted to *Fielder Israel,* who called the appellants before the court to pass a further account of *Isaac McPherson's* administration of *Andrew Agnew's* estate, and to deliver to him all the bonds, notes, accounts and evidences of debt, which the deceased administrator may have taken, received or had, as administrator, at the time of his death, and also to pay over to him all the

money in the hands of such deceased administrator as such, at the time of his death. The appellants complied with the requisition in all respects, and asked the court to grant to them, in behalf of their intestate, to be taken into his estate, a commission of at least *five per cent.* on the amount of assets accounted for by him, comprising the specific property included in the inventory, the debts received by the administrator, &c.

Upon this question the court deliberated, and finally refused the petition of the appellants, and granted to them *ten per cent.* on the money paid away by the administrator, towards the debts of the deceased, and the expenses and disbursements of the administration. They amounted to $9,426 76, and at the per centage allowed, yielded a commission of $942 67. This fell below the product of a commission of five per centum upon the whole estate, and the allowance caused the appeal in this case, the appellants contending that the court had not the power to grant to them in behalf of their intestate, a commission lower than the *minimum* rate of commission fixed by law.

We have given to this appeal its due attention, and there is not a doubt on our mind, that the Orphans Court were in the main right in the judgment they pronounced in this case. Whether *Isaac McPherson* merited a larger sum for the services he rendered, is not for us to decide. We have not, and cannot have the same view of the subject the Orphans Court had, and we could not say, if it was our province to determine, as accurately as that tribunal, what reward he was entitled to have. Our opinion however is, that they have not exceeded their authority, and that under the circumstances of this administration, they had the power to grant to his administrator a commission less in amount than the sum, the *minimum* rate of commission of *five per cent.* on the whole estate would produce. This is one of the limitations to the exercise of the discretionory power of the court, prescribed by the act of 1798, *ch.* 101, *sub-ch.* 10, *sec.* 2 ; but it is manifest from a view of the whole law, the limitation

was only intended to apply where the administration was full and complete.

This construction, however, of the act of 1798, need not be insisted on, since the act of 1820, *ch.* 174, *sec.* 6, puts it beyond a doubt. By this section, the *minimum* rate of allowance is purposely omitted to be mentioned, and the court have an unquestionable power, in case of a partial administration of a deceased person's estate, and where there is a further administrator to be paid for services, to allow such compensation as the services performed actually merit.

In declaring this opinion, we cannot agree with the Orphans Court in their reasoning upon this subject, nor in the manner they have made the allowance. They have allowed a ten per cent. commission on the money paid by the administrator towards the debts of the deceased, and the expenses of the administration. This was the mode of allowance pursued by the law anterior to the act of 1798, but was thereby abrogated and repealed. The inventory of the deceased's estate, and in an enlarged construction of this, all the assets accounted for by the administrator, is the true standard by which to ascertain the commission.

Where there has been a full administration, as we have said before, the court cannot descend below five per cent. on the whole property, but where the duty of administering the whole estate has been but in part performed, to make just and suitable remuneration for what has been *done*, they may give, if the circumstances require it, one per cent. and even less if necessary. Whatever is allowed must nevertheless be a per-centage on the whole assets, as this is the only standard known to the law, whereby to ascertain the commission. Supposing the Orphans Court assumed a mistaken standard, for the ascertainment of the commission, and might on consideration be disposed to change the amount granted by them, we reverse their decision, and direct the record to be returned to them.

DECREE REVERSED, AND THE PROCEEDINGS REMANDED TO THE ORPHANS COURT.